IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 21-cr-00012-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. TANYA BUI,

    Defendant.

## PLEA AGREEMENT

The United States of America (the government), by and through Celeste Rangel, Assistant United States Attorney for the District of Colorado, and the defendant, Tanya Bui, personally and by counsel, Steven Burstein, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1. This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

### I. AGREEMENT

**A. Defendant's Plea of Guilty:**

The defendant agrees to

(1)     waive indictment and plead guilty to Count 1 of an Information charging Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and Count 2 of an Information charging Possession with Intent to Distribute a Mixture and Substance Containing a Detectable Amount of Fentanyl, a Schedule II controlled substance, in violation of 21 United States Code, Sections 841(a)(1) and (b)(1)(C);

(2)     waive certain appellate and collateral attack rights, as explained in detail below;

(3)     agree not to contest forfeiture as more fully described below.

COURT EXHIBIT 1

**B. Government's Obligations:**

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A). The government agrees to move to dismiss the Indictment with prejudice. Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, move to reinstate any or all of the counts dismissed pursuant to this agreement and potentially file a superseding indictment.

Provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) as to Count 2 and agrees to file a motion requesting that the defendant receive a one-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).

**C. Defendant's Waiver of Appeal:**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter, other than that outlined above, in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1) the sentence exceeds the maximum sentence provided in the statutes of conviction, 18 U.S.C. § 924(c) and 21 U.S.C. §§ 841(a)(1), (b)(1)(C);

(2) the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 25 as to Count 2 plus a consecutive 60 months as to Count 1; or

(3) the government appeals the sentence imposed.

If the first criteria applies, the defendant may appeal only the issue of how her sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2) the defendant was deprived of the effective assistance of counsel; or

(3) the defendant was prejudiced by prosecutorial misconduct.

The defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this case number, except where the defendant unsuccessfully objects to the grade of violation applied by the court during the district court revocation proceedings. In that event, this waiver does not apply and the defendant may appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range calculated by the court.

The defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that "extraordinary and compelling reasons" for a sentence reduction are lacking or that a sentence reduction is not warranted under the factors set forth in 18

U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

**D. Forfeiture of assets**:

The defendant admits the forfeiture allegations. The defendant further agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to Title 18, United States Code, Sections 924(d); Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461(c), whether in the possession or control of the United States, the defendant, the defendant's nominees, or elsewhere. The assets to be forfeited specifically include, but are not limited to: (1) Springfield Armory XD pistol, 45 caliber, bearing serial number US684774, (2) the recovered ammunition, and (3) approximately $6,825.00 in United States currency seized, which the defendant agrees constitute proceeds from the violation alleged in Count 2. The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant understands that pursuant to 18 U.S.C. § 983, the seizing agency is required to send notice in non-judicial civil forfeiture matters. Having been advised of said rights regarding notice, the defendant hereby knowingly and voluntarily waives his rights to notice being sent within the time frames in 18 U.S.C. § 983 and to having the property returned to him if notice is not sent within the prescribed time frames. The defendant further agrees to the forfeiture of any substitute assets up

to the value of any property described above pursuant to 21 U.S.C. § 853(p) and Fed. R. Crim. P. 32.2(e).

The defendant admits and agrees that the conduct described in the Stipulation of Facts below provides a sufficient factual and statutory basis to establish that the requisite nexus exists between the specific property subject to forfeiture and the offense to which defendant is pleading guilty. Pursuant to Fed. R. Crim. P. 32.2(b)(1), the United States and the defendant request that at the time of accepting this plea agreement, the Court find that the Government has established the requisite nexus and enter a preliminary order of forfeiture.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

In addition to forfeiture, the defendant further agrees to relinquish all claim, title, and interest he has in the above-mentioned property from the defendant to the United States.

With regard to the $1,065.00 in United States currency seized from Kevin Bui's bedroom, the defendant disclaims any ownership interest. ~~To the extent the defendant could be construed as having any legal interest in the $1,065.00 in United States currency seized from the co-defendant's vehicle, the defendant relinquishes and abandons all claims, title, and interest the defendant has in such property.~~ [handwritten: 4/3 TB]

## II. ELEMENTS OF THE OFFENSES

The parties agree that the elements of Possession of a Firearm in Furtherance of a Drug Trafficking Crime, and Possession with Intent to Distribute a Mixture and Substance Containing a Detectable Amount of Fentanyl are as follows:

### Count 1: 18 U.S.C. § 924(c)

*First*: the defendant committed the crimes of Possession with Intent to Distribute Less than 50 Kilograms of Marijuana and Possession with Intent to Distribute 40 grams or more of a Mixture and Substance Containing a Detectable Amount of Fentanyl, which are drug trafficking crimes;

*Second*: the defendant possessed a firearm in furtherance of these crimes.

### Count 2: 21 U.S.C. §§ 841(a)(1), (b)(1)(C)

*First*: The defendant knowingly or intentionally possessed a controlled substance as charged;

*Second*: The substance was in fact fentanyl;

*Third*: The defendant possessed the substance with the intent to distribute it.

## III. STATUTORY MAXIMUM SENTENCE

The maximum sentence for a violation of Count 1 of the Information is: not less than 5 years' imprisonment, not more than life imprisonment, consecutive to any other sentence; maximum term of supervised release 5 years; maximum fine $250,000; and $100 mandatory victim's fund assessment fee. The maximum sentence for a violation of Count 2 of the Information is: not more than 20 years' imprisonment; minimum term of supervised release 3 years; maximum fine $1,000,000; $100 mandatory victim's fund assessment fee.

## IV. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

## V. STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree the government would be able to prove the following facts at trial.

1. In August 2020, Denver Police Department homicide detectives investigated an arson and homicide that occurred on August 5, 2020 in Denver, Colorado. As part of that investigation, detectives authored numerous search warrants which ultimately led to the identification of suspects in the homicide and information associated with these suspects, such as cell phone numbers and social media accounts. One of the cell phones identified was subscribed to the defendant. This led investigators to investigate the defendant and they obtained search warrants for her social media accounts.

2.     The defendant's social media accounts, as well as records from her juvenile brother's iCloud account, showed that the defendant was distributing marijuana, fentanyl, and firearms.  The parties agree that the defendant's relevant conduct begins on July 1, 2020.

3.     The defendant used her social media accounts to message customers and her source of supply regarding the distribution of marijuana.  She referred to marijuana in various terms such as "packs," "gelato," "dream," "shake," "nuggs," and would frequently send photographs and videos of the marijuana she was trying to sell.  The defendant would conduct drug deals out of her vehicle, as well as at her place of employment at 3208 W. Ada Place.  For example, in Snapachat messages exchanged with user chucksygh on July 7 and 8, 2020, chucksygh stated that an associate wanted to see the marijuana the defendant was offering to sell and chucksygh asked where she was at. The defendant told chucksygh to "come to my job," and she indicated "i don't have any gelato left," "it's just dream," and "3208 w ada pl 80219."

4.     The iCloud account of the defendant's juvenile brother, Kevin Bui, contained their text messages; these messages revealed that the defendant and her brother discussed measuring, packing, weighing, purchasing, and selling narcotics, primarily fentanyl. Repeated text messages from the defendant to Kevin Bui showed that she would direct him where to go, who to meet with, how much money he needed to collect, and how many fentanyl pills he was to sell.  For example, on July 20, 2020, the defendant texted Kevin Bui, "wyd," or what are you doing.  Kevin Bui indicated he was doing nothing and asked her what she wanted.  The defendant texted, "wanna bring me some thangs," to which Kevin Bui texted, "what do you want me to bring because Amanda was suppose

to come over." The defendant texted, "the blues" "in my drawer." Kevin Bui asked "way," to which the defendant responded, "office." These texts show that the defendant asked Kevin Bui to bring her fentanyl pills from the drawer in her room to her place of employment. Later, Kevin Bui texted, "Just one bag or" "the rest" and "Where should I pull up," to which the defendant texted, "put them in my car." Kevin Bui told her, "Unloc." These text messages show that Kevin Bui asked if he should bring one bag or all of the fenantyl pills the defendant had in her room and Kevin Bui also asked where he should put the drugs when he arrived. The defendant told him to put the pills in her car, and he asked her to remotely unlock the car so that he could do that.

5.  On January 27, 2021, the defendant's residence at 10676 W. Rockland Dr was searched pursuant to a search warrant related to the August 2020 homicide. The defendant's bedroom was located in the basement of the residence and was searched. In the nightstand drawer next to her bed was a clear plastic bag with 692 fentanyl pills. On top of the defendant's dresser was a loaded magazine. In the defendant's walk-in closet were jars of marijuana, a loaded firearm, scale with apparent drug residue, plastic baggies, a large trash bag containing marijuana, two boxes of ammunition, and $6,825 cash. In Kevin Bui's second-floor bedroom there was a clear plastic bag with 21 fentanyl pills located in his top dresser drawer as well as $1,065 cash.

6.  The fentanyl pills located in the defendant's bedroom had a total net weight of 74 grams. The fentanyl pills located in Kevin Bui's bedroom had a total net weight of 2 grams. The marijuana located in the defendant's closet had a net weight of 3,999 grams. The defendant stipulates that she possessed with the intent to distribute both of these controlled substances, less than 50 kilograms of marijuana and 40 grams or more

of fentanyl. The defendant further stipulates that she possessed the firearm located in her closet in furtherance of these drug trafficking crimes.

7. The defendant's relevant conduct is 193.99 kilograms of converted drug weight.

8. The parties stipulate that all of the above conduct occurred in the District of Colorado.

## VI.   ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. The parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the estimate below.

*Count 1:*

    a) The base guideline is U.S.S.G. § 2K2.4, which provides that the guideline sentence is the minimum term of imprisonment required by statute. The minimum term of imprisonment required by 18 U.S.C. § 924(c)(1)(A)(i) is **5 years**.

b) Pursuant to U.S.S.G. § 2K2.4(b), U.S.S.G. Chapters Three and Four shall not apply to Count 1.

c) Pursuant to U.S.S.G. § 2K2.4(d)(1), the fine guideline established in U.S.S.G. § 5E1.2, shall be the fine guideline that would have been applicable had there only been a conviction for the underlying offense, Possession with Intent to Distribute. The estimated offense level for this offense is either 25 or 21. Therefore, the fine range for this offense would be $15,000 to $1,000,000.00 plus applicable interest and penalties.

d) Supervised Release: Pursuant to U.S.S.G. § 5D1.2, if the Court imposes a term of supervised release, that term is not more than five years.

*Count 2*:

a) The base guideline is U.S.S.G. § 2D1.1(c)(8), which provides that the base offense level is **24**.

b) There is a **+2**-level enhancement for being an organizer, leader, manager, or supervisor. § 3B1.1(c). Accordingly, there is also a **+2**-level increase because the defendant, knowing that an individual was less than 18 years of age, distributing a controlled substance to that individual or involved that individual in the offense. § 2D1.1(b)(16)(B)(i). The defendant disputes the application of these enhancements.

c) The adjusted offense level is **28** according to the government and **24** according to the defendant.

d) Assuming the defendant does not engage in conduct that qualifies for the obstruction of justice enhancement under §§ 3C1.1 and 3E1.1, comment (note 4) between the time of her guilty plea and sentencing, the defendant has clearly demonstrated acceptance of responsibility and therefore should receive a **3**-level downward adjustment for timely acceptance of responsibility. § 3E1.1. The resulting total offense level is **25** according to the government or **21** according to the defendant.

e) The parties understand that the defendant's criminal history computation is tentative and based on the defendant's prior convictions. The parties believe the defendant is in criminal history category **I**.

f) The career offender/criminal livelihood/armed career criminal

       adjustments do not apply.

  g)  The advisory guideline range resulting from these calculations is 51 to 71 months (for total offense level 25) and 37 to 46 months (for total offense level 21).  However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense levels estimated above could conceivably result in a range from 37 months (bottom of Category I for total offense level 21) to 137 months (top of Category VI for total offense level 25).  The guideline range would not exceed, in any case, the statutory maximum applicable to the count of conviction.

  h)  Pursuant to guideline § 5E1.2, assuming the estimated offense level above is correct, the fine range for this offense would be $15,000 to $ 1,000,000, plus applicable interest and penalties.

  i)  Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term is not less than 3 years.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII. ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

Date: 02/01/2022

_____
Tanya Bui
Defendant

Date: 02/01/2022

_____
Steven Burstein
Attorney for Defendant

Date: 2/3/2022

_____
Celeste Rangel
Assistant U.S. Attorney