```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                      FOR THE DISTRICT OF COLORADO

 3   Criminal Action No. 21-cr-12-PAB-1

 4    UNITED STATES OF AMERICA,

 5          Plaintiff,

 6          vs.

 7    TANYA BUI,

 8          Defendant.

 9   ----------------------------------------------------------------

10                      REPORTER'S TRANSCRIPT

11                       Sentencing Hearing

12   ----------------------------------------------------------------

13          Proceedings before the HONORABLE PHILIP A. BRIMMER,
     Judge, United States District Court for the District of
14   Colorado, commencing on the 15th day of July, 2022, in Courtroom
     A701, United States Courthouse, Denver, Colorado.
15

16                            APPEARANCES
     For the Plaintiff:
17   CELESTE B. RANGEL, United States Attorney's Office, 1801
     California Street, Suite 1600, Denver, CO 80202
18

19

     For the Defendant:
20   HARVEY A. STEINBERG and STEPHEN M. BURSTEIN, Springer &
     Steinberg PC, 1600 Broadway, Suite 1200, Denver, CO  80202
21

22

23

24
     Reported by KEVIN P. CARLIN, RMR, CRR, 901 19th Street, Room
25   A259, Denver, CO 80294, (303)335-2358
```

21-cr-12-PAB-1     Sentencing Hearing     07-15-2022

1          P R O C E E D I N G S

2          (Proceedings commenced at 9:04 a.m.)

3              THE COURT:  The matter before the Court is United

4    States of America versus Tanya Bui.  This is criminal case

5    21-cr-12.  Ms. Rangel appears on behalf of the United States.

6    Good morning to you.

7              MS. RANGEL:  Good morning to you.

8              THE COURT:  Mr. Steinberg is here on behalf of

9    Ms. Bui.  Ms. Bui is in custody.  And, Mr. Steinberg, who are

10   you joined by at counsel table?

11             MR. STEINBERG:  Mr. Stephen Burstein.

12             THE COURT:  Oh, sorry.  Didn't recognize you with your

13   head turned.  So, Mr. Burstein is here as well on behalf of

14   Ms. Bui.  Good morning to each of you.  We're here today for

15   sentencing in this matter.  Mr. Steinberg, Mr. Burstein, have

16   you had a chance to review the presentence investigation report

17   and the addendum and talk to Ms. Bui about them?

18             MR. STEINBERG:  Yes, sir.

19             THE COURT:  All right.  And on behalf of Ms. Bui,

20   Mr. Steinberg and his firm have filed a number of pleadings, or

21   at least documents, objections to the presentence report, which

22   is docket number 85.  And also a motion for a variant sentence,

23   which is docket number 86.  Mr. Steinberg, on behalf of Ms. Bui,

24   any additional objections to the presentence investigation or

25   any additional filings?

Kevin P. Carlin, RMR, CRR

21-cr-12-PAB-1      Sentencing Hearing      07-15-2022

1      MR. STEINBERG:  No, sir.

2      THE COURT:  All right.  Thank you.  Ms. Rangel, has

3  the United States had an opportunity to review the presentence

4  investigation report and the addendum?

5      MS. RANGEL:  Yes, Your Honor.

6      THE COURT:  The United States filed a motion to give

7  Ms. Bui the additional one-level reduction for acceptance of

8  responsibility, which is docket number 94.  The United States

9  also filed pursuant to the sentencing -- or, sorry -- the plea

10  agreement, a motion to dismiss the indictment given the fact

11  that Ms. Bui has pled guilty to an information.  That's docket

12  number 95.

13      The United States also filed a response to Ms. Bui's

14  objections, which is, I think it's docket number 92.  And the

15  United States also filed a response to the motion for a variant

16  sentence, which is docket number 93.

17      Any objections on behalf of the United States, or any

18  additional filings on behalf of the United States?

19      MS. RANGEL:  No objections, Your Honor.  The only

20  additional filing was the motion for preliminary order of

21  forfeiture, which you also entered an order on yesterday.

22      THE COURT:  Yes.  That's right.  All right.  Thank you

23  very much.

24      Why don't we then begin by -- yes, on that preliminary

25  order of forfeiture, by the way, is docket number 97.  Why don't

21-cr-12-PAB-1     Sentencing Hearing     07-15-2022

1   we take up the objections first.  Mr. Steinberg, go ahead.

2          MR. STEINBERG:  Thank you, Judge.  If I could start

3   with the enhancement for the premises?

4          THE COURT:  Sure.

5          MR. STEINBERG:  So, obviously when the parties

6   calculated the advisory guidelines, neither of the parties

7   believed that that applied in this particular matter.  And I'm

8   going to suggest to you, we don't believe it should apply for a

9   variety of reasons.

10         In the stipulation of facts, you will note that the

11  sales that apparently took place here don't allege that the

12  sales took place in the house.  They took place pursuant to the

13  stipulation of facts at various locations, the car, et cetera.

14         Two, this was not a situation where -- other than one

15  search, and I don't want to repeat everything that was put in

16  the motion.  One search took place, and there were drugs found

17  in the bedroom associated with the defendant.  But having said

18  that, we don't believe that one isolated incident would be

19  sufficient to find that --

20         THE COURT:  What's the isolated incident?

21         MR. STEINBERG:  The search.

22         THE COURT:  Okay.

23         MR. STEINBERG:  The search being the isolated incident

24  in the sense that there's not other ancillary or collateral

25  evidence that that home was -- and that room was primarily used.

21-cr-12-PAB-1     Sentencing Hearing     07-15-2022

1   And it isn't even a home.

2           THE COURT:  What about the James log?

3           MR. STEINBERG:  I'm sorry?

4           THE COURT:  What about the James log and all the text

5   messages where Ms. Bui is telling her brother to go by the house

6   and pick up this, that, and the other thing, all of them being

7   drugs?

8           MR. STEINBERG:  I think that that's clear that from

9   time to time she would distribute to him for further

10   distribution.  No question about that.

11           THE COURT:  Well, it wasn't just that.  It was she

12   telling him to go back to the house and grab stuff from her

13   bedroom so that she could -- so that he could go off and

14   complete drug deals on her behalf.

15           MR. STEINBERG:  This may segue into the others.  I

16   think that he also had his own distribution network.

17           THE COURT:  I know, but she's saying to go get her

18   stuff.

19           MR. STEINBERG:  I get that, but I don't think that

20   that in and of itself means that the primary use -- and I know

21   that the *Murphy* case talks about primary use and how it applies,

22   but I don't think that in and of itself can say that this was a,

23   quote, stash house.  That the primary use for drugs in addition

24   to, if you will, residency, given the fact that other people

25   resided at the residency, the defendant did not have an

Kevin P. Carlin, RMR, CRR

21-cr-12-PAB-1     Sentencing Hearing     07-15-2022

1   ownership interest in the residency, let alone her room.  So, I

2   don't think the Court can make that finding here in this

3   situation.

4          THE COURT:  Okay.  Now we're blending in all sorts of

5   different things.  So, first of all, let's stick with what you

6   originally started arguing, which is that, you know, one search

7   isn't enough, because it's an isolated incident.

8          MR. STEINBERG:  Correct.

9          THE COURT:  But yet there's all this evidence from her

10  that, you know, she on other occasions than the date of the

11  search had her brother go pick up stuff from the house, because

12  it's her deal, and then go out and distribute it.

13         So, that seems like there is not just one isolated

14  incident.  There's multiple occasions where that's happening,

15  and the inferences that she was using her room for that purpose

16  over a period of time.  So, that's one thing.

17         MR. STEINBERG:  Yes.

18         THE COURT:  And then you also make the argument, and

19  this is made in the objection too, that the fact that she

20  doesn't have an ownership interest in the room, you know, is

21  somehow relevant to the issue of whether she should get that

22  particular enhancement.  No cases were cited in support of that,

23  are there?

24         MR. STEINBERG:  Nothing we could find, and I would

25  suggest to you that she doesn't have exclusive control over that

21-cr-12-PAB-1    Sentencing Hearing    07-15-2022

1  room either.

2          THE COURT:  What evidence do you have of that?

3          MR. STEINBERG:  There's no suggestion that there was a

4  lock on the door, that she could exclude anyone.  She was a

5  child of the owners of that home.  So, you have a situation

6  where in terms of -- I don't have to carry the burden.  It's not

7  my burden to carry by way of a preponderance of the evidence,

8  but rather where you have a situation where you have a child of

9  adults living at the adults' home, and there's no showing that

10 she could exclude anybody, including her parents, let alone

11 anyone else, that there was a lock on the door, that the items

12 were found or housed in a locked area, it's our position that

13 that also is an inference that in fact because the stash house

14 theory is that this is where you, quote, hide, control the

15 access to drugs, and that doesn't exist here.

16         THE COURT:  Yeah, but we know that the brother has his

17 own room, and in fact we know that the brother has, you know,

18 drug proceeds in his room.  But nonetheless, Ms. Bui has, you

19 know, all sorts of drugs and paraphernalia and other indicia of

20 drug dealing in her room.  No suggestion -- was the -- I don't

21 know the answer to this, but was the rest of the house searched?

22         MR. STEINBERG:  I'm sure it was, and no other drugs

23 were found, in answer to your question, or anticipated question.

24         THE COURT:  Yeah.  So, no suggestion that the parents

25 were involved in drug dealing; right?

Kevin P. Carlin, RMR, CRR

21-cr-12-PAB-1    Sentencing Hearing    07-15-2022

1          MR. STEINBERG:  Zero evidence of that.  But again,

2    isn't the spirit and theory of the situation, which is why the

3    parties probably didn't come to the conclusion it applied that

4    there has to be the ability, if you will, to say this area's

5    primary, under the statute, use was for, if you will, storage of

6    drugs?  And that implies the ability to control and exclude

7    others, and there's not evidence of that.

8          THE COURT:  Well, it could also imply that maybe the

9    parties to the plea agreement didn't know the law very well.  Is

10   that a possibility?

11         MR. STEINBERG:  No.

12         THE COURT:  Uh-huh.

13         MR. STEINBERG:  I can't speak for the prosecution.  I

14   know the law pretty well.  Unless this was a trap, and I don't

15   think counsel would do that.

16         THE COURT:  Let's take a look at the guideline,

17   because doesn't the guideline define premises as a room?

18         MR. STEINBERG:  Oh, yeah.  No question.

19         THE COURT:  Okay.  Then why are we looking at the

20   house?

21         MR. STEINBERG:  Because I think that it's a room

22   within the house that is not, if you will, held to the exclusion

23   of others.  And I think that that's the inference here.

24         THE COURT:  Why wouldn't the inference of her having

25   her own bedroom full of drugs and guns and her parents not being

21-cr-12-PAB-1     Sentencing Hearing     07-15-2022

1   involved in any illicit activity, why wouldn't there be a strong

2   inference that that's her bedroom?  And although she may not

3   have a lock on it, I haven't seen a single solitary case that

4   would imply that in order for her to be able to get the

5   enhancement, there needs to be.

6           As a matter of fact, there's a lot of cases where

7   that's not the situation at all, which I'm going to cite to you

8   shortly, but where is any case on exclusivity when we're talking

9   about a room that is alleged to be a storage place for --

10          MR. STEINBERG:  Isn't by definition a stash house in

11  theory a place where you, quote, hide, emphasis added, drugs,

12  and if you, quote, hide drugs --

13          THE COURT:  Not hide.  Store.

14          MR. STEINBERG:  Well, I think that the implication is

15  hide, because you just don't store them.  You store them for the

16  purposes of hiding them --

17          THE COURT:  She did.

18          MR. STEINBERG:  -- from others.  That's the purpose

19  and spirit behind a, quote, stash house, so you have it hidden

20  away with your control over that area --

21          THE COURT:  Why wouldn't the inference be just the

22  opposite?  Ms. Bui is so convinced that no one else is going to

23  mess with her stuff that she doesn't have locks on the door.

24  She just puts the stuff in the closet and in drawers and on her

25  nightstand --

21-cr-12-PAB-1    Sentencing Hearing    07-15-2022

1           MR. STEINBERG:  Well, I don't know, but --

2           THE COURT:  -- because she's not worried.  Her brother

3   has his own room, and her parents aren't involved, and they're

4   not going to mess with her stuff.

5           MR. STEINBERG:  I think common sense belies that when

6   in fact you have a situation where it is a person of tender

7   years living at her parents' home.  So, that's why we don't

8   think it applies.

9           THE COURT:  The tender years person, the one who has

10  the guns and the drugs and is a drug dealer?

11          MR. STEINBERG:  Well, you have different views about

12  youth, obviously, and in terms of maturity and in terms of the

13  special circumstances that apply here than I'm familiar with.

14          THE COURT:  Okay.  Anything else on -- we're talking

15  about just this enhancement right now.  Anything else?

16          MR. STEINBERG:  No.

17          THE COURT:  All right.  Thank you.  Ms. Rangel?

18          MS. RANGEL:  Thank you, Your Honor.  I guess just to

19  add to what I responded to in my response, because I did point,

20  as the Court noted, to specific text messages between them, I

21  agree with the Court's analysis that we are talking about a

22  room, and that it doesn't -- you don't have to show that the

23  entire house qualifies for this stash house enhancement.  That

24  would obviously eliminate the ability to apply this enhancement

25  to, say, an apartment building, things along that line.  You

21-cr-12-PAB-1    Sentencing Hearing    07-15-2022

1   focus on --

2          THE COURT:  Or to a hotel.

3          MS. RANGEL:  Right.  And so I just -- I don't --

4   there's no authority for that, and in fact the cases make clear,

5   I believe, that you focus on the purpose; right?  This is why we

6   look at the multiple primary use analysis, as the Tenth Circuit

7   has guided us.  The notion that she did not have the ability to

8   exclude anyone is absolutely unsupported by the evidence, and

9   no, the defendant --

10          THE COURT:  Isn't Mr. Steinberg right that she doesn't

11  have a lock on the door?  Right?

12          MS. RANGEL:  I think what I would say to that is that

13  the evidence is silent.  I don't think -- there's certainly no

14  evidence she did not have a lock.

15          THE COURT:  Well, there's no -- the text messages

16  don't say anything about hey, Kevin, here is the code to my --

17  or hey, you know where the key to my room is.

18          MS. RANGEL:  Agreed.  I definitely agree with that.

19  But that also doesn't mean, though, that she didn't have the

20  ability to exclude others.  I think importantly, when you break

21  down --

22          THE COURT:  But are you -- I mean, to start with the

23  basics, are you aware of any case that requires for purposes of

24  the stash house enhancement that there be an ability to exclude

25  others?

21-cr-12-PAB-1    Sentencing Hearing    07-15-2022

1      MS. RANGEL:  No.  I am not aware of that authority.

2  And, further, I would say when you look at the evidence in this

3  case, when law enforcement came to execute the search warrant,

4  as the Court correctly said on the entire house, she called 911,

5  and she said people are trying to break into my house.  You can

6  tell by that intent she at least believes that she has some

7  control over that house; right?  She didn't have her parents

8  call and say, hey, it's your house, you've gotta make this call.

9  But more than that --

10      THE COURT:  I don't know if anyone would make that

11  distinction.  Even if you did rent the house, someone is like

12  breaking into the house, and you would make that legal

13  distinction on the 911 call?  I kind of doubt it.

14      MS. RANGEL:  I don't think it's a legal -- my point is

15  not one of legality, per se.  It's more to respond to this

16  notion of she's just a child living in her parents' basement.

17  It is clear that she believed this to be just as much her

18  residence, without any sort of fiscal responsibility for it,

19  perhaps, but I think that's -- that's my sole point.

20      I'm not saying that that's the crux of my argument, but

21  my sole point is that you look at that intent, and clearly she

22  believes that she has some ability to control that.

23      But I think more salient, and more to the point are the

24  multitude of text messages with Kevin where she is very clearly

25  directing him.  And she never once says anything along the lines

21-cr-12-PAB-1    Sentencing Hearing    07-15-2022

1   of, you know, you and I share control over this or things like

2   that.  It's very clear, go in my bedroom, go do this.

3            I think that also shows the intent of I believe this to

4   be my space, and I'm telling you to go into my space in order to

5   get drugs, in order to get the drugs that then you will

6   distribute for me.

7            And then I think that evidence directly refutes this

8   notion of she thought that she just had no ability to control

9   anyone's access to it.  She's directly telling people,

10  specifically Kevin, to access it.

11           The other argument put forth for this is, you know,

12  stash house necessarily means that drugs have to be hidden.

13  Again, I am not aware of any authority that establishes that,

14  but it doesn't really matter on the facts of this case, because

15  those drugs in a way were hidden.  The fentanyl in her room was

16  in the drawer, in the nightstand.  The marijuana was in very

17  large bags, but in her closet.  They weren't just sitting in

18  plain view.

19           THE COURT:  I thought they were in jars.

20           MS. RANGEL:  They were in bags, and I believe that

21  there was a jar as well.  It was a large amount of marijuana in

22  that closet.  The drug -- I'm sorry.  The gun, the cash, the

23  scale, the baggies, all of that were also in that closet.

24           And so this notion of, well, things have to be hidden,

25  she had hidden them within that room.  They were not in plain

21-cr-12-PAB-1    Sentencing Hearing    07-15-2022

1   view, so if anyone walked into that bedroom, they would

2   immediately see those things.  So, not only is that just simply

3   not a defense to this enhancement, but it's also just not in

4   line with the facts of this case.

5           THE COURT:  Okay.  Mr. Steinberg, anything else?

6           MR. STEINBERG:  No, sir.  Thank you.

7           THE COURT:  All right.  Thank you.  So, the

8   enhancement that we are talking about right now is one under

9   2D1.1(b)(12), which is an enhancement if the primary use of the

10  residence was such that it indicated that drugs were being in

11  part stored at that -- if you maintain a premises for the

12  purposes of manufacturing or distributing the controlled

13  substance.

14          And then the commentary, which as the Government

15  correctly points out is authoritative, that is referenced in the

16  *Murphy* case from the Tenth Circuit from 2018 explains that the

17  enhancement applies to a defendant who knowingly maintains a

18  premises for the purpose of manufacturing or distributing the

19  controlled substance, including storage of a controlled

20  substance for the purpose of distribution.  So, that's really

21  the issue here.

22          It's not that she was dealing drugs from the bedroom.

23  She wasn't having people drop by the bedroom, at least as far as

24  I can tell, but the question is whether she was storing

25  controlled substances for the purposes of distribution.

21-cr-12-PAB-1    Sentencing Hearing    07-15-2022

1    That fact is well established.  The United States has

2  filed references to the James log, which contains her

3  descriptions of various communications that she had by a

4  telephonic means, including ones with her brother Kevin,

5  indicating that she was directing him on various occasions to go

6  by her bedroom, pick up drugs, in order to complete a drug sale

7  that she had arranged.

8    Moreover, as Ms. Bui acknowledges, when the search was

9  conducted of that bedroom, it disclosed a large number --

10  distribution quantities of fentanyl and distribution --

11  distribution quantities of marijuana, as well as various things

12  that are considered tools of the trade, such as guns, packaging

13  material, and what not.

14    So, the question then becomes whether or not the house

15  or perhaps the room had a purpose of being used for the storage

16  of a controlled substance for the purpose of distribution.  The

17  Tenth Circuit case law, namely *United States versus Murphy*, has

18  indicated that the sole purpose of that premises does not

19  necessarily have to be drug use, but on the other hand, it must

20  be one of the primary or principal uses of the premises.

21    The various cases have pointed out that the enhancement

22  does not necessarily focus on the entire house in this case.

23  There are lots of cases out there that talk about a particular

24  room within a house.  For instance, there are a number of cases

25  where a hotel room has been considered to be a premises that can

21-cr-12-PAB-1     Sentencing Hearing     07-15-2022

1  qualify for the enhancement.

2          And even if a house is not quite analogous to a hotel,

3  there are also many cases that describe a particular room of a

4  house as being the premises that is focused on -- and in fact

5  the definition under the guideline indicates that the premises

6  can be a room.

7          In this particular case, the Court finds that the

8  defendant -- this was the defendant's bedroom.  She may not have

9  had locks on the door, but the circumstantial evidence indicates

10  that it was her possessions within the room.  She was the one

11  who controlled the room.  We know that because she's texting her

12  brother Kevin and having him go into the room to get various

13  things.  And therefore, she, without question, was able to

14  exercise control over the premises, and she was doing so for a

15  period of time.

16          The fact that there are other people living in the

17  house, like her parents, is actually irrelevant, as the Seventh

18  Circuit points out in *United States versus Evans*, which is

19  reported at 826 F.3d 934.  The Seventh Circuit mentions how

20  under that particular enhancement, you focus on the defendant's

21  conduct, and it's the defendant's conduct that is important

22  here.

23          And in fact, in regard to that room, it's not like her

24  brother is dealing drugs out of that room or using it for his

25  purposes.  Mr. Steinberg disclaimed that her parents --

21-cr-12-PAB-1      Sentencing Hearing      07-15-2022

1    Ms. Bui's parents had anything to do with any of it, but rather

2    the defendant's conduct is that she is in fact using the room

3    for the purpose of storing drugs for distribution.

4           Here is another case that demonstrates that you don't

5    have to focus on the entirety of the premises.  11th Circuit

6    case, *United States versus Hernandez-Quinones*, reported at 779

7    F Appendix 617, from 2019.  In that particular case, it involved

8    an apartment.  The apartment was rented, and the defendant only

9    was using one room of it, but didn't have exclusive control over

10   that particular room.  Nevertheless, the District Court applied

11   the premises for maintaining a stash house.

12          The defendant objected that he didn't maintain the

13   apartment as a whole, but that District Court nevertheless

14   applied it because he was using a room within the apartment as a

15   stash house, and the 11th Circuit affirmed the application of

16   the enhancement.

17          So, here, I find that Ms. Bui meets all the criteria.

18   And looking at the totality of the circumstances, including the

19   number of drug sales that she was engaged in, the fact that

20   there's no other evidence whatsoever that she was using any

21   other location to store drugs, the fact that she was exchanging

22   text messages with her brother indicating that he was to pick up

23   drugs from her bedroom and then complete sales, the fact that

24   there are indicia of the tools of the drug trade contained

25   within that room, and distribution quantities of drugs within

21-cr-12-PAB-1    Sentencing Hearing    07-15-2022

1    the room, demonstrates that the totality of the circumstances

2    indicate that the criteria -- the enhancement have been

3    satisfied, and as a result, the Court will overrule that

4    objection to the presentence investigation report.

5         Next enhancement, Mr. Steinberg?

6         MR. STEINBERG:  Mr. Burstein will handle that one.

7         THE COURT:  All right.  Thank you.

8         MR. BURSTEIN:  Good morning, Your Honor.

9         THE COURT:  Good morning.

10        MR. BURSTEIN:  In terms of the enhancement that

11   applies for the aggravating role, and then the utilization of a

12   minor, which I'm addressing essentially as one, I think it's

13   important to note several things.  There are some text messages,

14   as the Court noted contained in the discovery where there are

15   conversations between my client and her brother in terms of

16   bringing different items, either to work or her room, the things

17   that the Court had mentioned.

18        There are also many other text messages going between

19   them, not only talking about bringing the items mentioned by the

20   Court and referenced by the Court earlier, but also other things

21   that would be normal correspondence between family members, and

22   can you come and bring me some clothes or can you come and pick

23   me up, can you grab me some food, things like that going back

24   and forth.  They don't show a supervisory role or director role,

25   but instead just show that there's a relationship, and here a

21-cr-12-PAB-1    Sentencing Hearing    07-15-2022

1    familiar relationship between these two individuals.

2          I would note as well that as the Court is aware, there

3    are certainly allegations that her brother at the time

4    maintained his own distribution, i.e. had clients that he was

5    selling to that were apart from my client, had substance in his

6    room or money in his room that is not attributed to Ms. Bui.

7          He is essentially doing his own thing and his own

8    actions, and the communications between them, when you look at

9    them in the totality, do not indicate that she is acting in that

10   supervisory capacity, that he is necessarily either an employee

11   or directed by her to do these things on an ongoing and

12   continual basis for her benefit, but instead are more indicative

13   of that familiar relationship between the two of them as they

14   are basically doing favors for each other as they have time in

15   their schedule permits, whether it's food, clothes, going

16   different places, getting different cars, sharing rides, or

17   going into the room to get substances.  That is just one small

18   facet of the entire encounter together.

19          THE COURT:  Okay.  But why would the fact that she is

20   asking him to do even what you call favors -- why is the fact

21   that on other occasions she didn't or that she does favors for

22   him too make her someone who wasn't, you know, organizing things

23   or supervising him in accomplishing certain tasks that she wants

24   to accomplish?

25          MR. BURSTEIN:  Because it's not a situation where she

Kevin P. Carlin, RMR, CRR

21-cr-12-PAB-1     Sentencing Hearing     07-15-2022

1   is the organizer, i.e. part of an organization where she is

2   essentially the head of the organization, and he is somewhat

3   subordinate to her in terms of that or that she's either a

4   leader, manager, or supervisor.  This is a context of brother

5   and a sister who are just talking about different things and

6   helping each other at different times.

7          That is incidental to their own separate interests, and

8   not part of one common scheme or organization together, where

9   she's saying, can you grab this or do this for me, isn't I'm

10  employing you or having you do this in order to further my

11  operation.  It's instead, you're sitting at home doing nothing,

12  I'm here doing this, can you grab this for me, or vice versa,

13  because there are also messages that go the other way.

14         I also do think it's somewhat relevant to the Court's

15  consideration, it was reported that her brother unfortunately

16  has a separate case now distinct and apart from all of this that

17  occurred a year after this incident, where she has zero

18  connection to her brother, or her brother is still in the same

19  situation where he is apparently, at least alleged to be

20  distributing controlled substances, which is I think also

21  indicative of the separate nature of their actions.

22         And so I think when you're looking at this particular

23  characteristic, in terms of this enhancement, I don't think that

24  the type of communication in its totality or when looked at as

25  with all of the different text messages and all of their

21-cr-12-PAB-1     Sentencing Hearing     07-15-2022

1  different interactions, indicates that she is somehow either the

2  organizer or leader or manager or supervisor in terms of some

3  sort of a drug-dealing conspiracy here, and so that's why we

4  don't believe that this would apply.

5          THE COURT:  All right.  Thank you.  Ms. Rangel?

6          MS. RANGEL:  I don't think you need to hear a whole

7  lot from me.  The text messages make it clear, yes, they

8  obviously are brother and sister, and she was nearly constantly

9  multiple times a day directing him, go meet this person, this is

10 the price, this is the amount, collect this much money.  Just

11 very persistent direction from her.  That she was able to do

12 that over him because of their relationship is not a reason for

13 this enhancement to not apply.

14         THE COURT:  All right.  I'm sorry.  Anything else?

15         MS. RANGEL:  I just don't think you need to hear much

16 else from me.

17         THE COURT:  Thank you.  Mr. Burstein, anything else?

18         MR. BURSTEIN:  Nothing else, Your Honor.

19         THE COURT:  All right.  I'm going to overrule the

20 objection to this particular enhancement.  Mr. Burstein is right

21 that clearly Kevin Bui is involved in his own separate drug

22 distribution operation, and that could be considered distinct

23 from any type of, let's call it a conspiracy by Ms. Bui, or at

24 least an operation by Ms. Bui to distribute drugs.

25         Nonetheless, I don't believe that those are mutually

21-cr-12-PAB-1     Sentencing Hearing     07-15-2022

1   exclusive.  Ms. Bui clearly, because we know from the text

2   messages -- and the Government cites them in its response, and I

3   have checked those references and believe that they in fact do

4   support the Government's argument -- was using her brother to

5   assist in her drug distribution operation.

6          There's no suggestion whatsoever that Mr. Burstein

7   didn't clearly know the purpose and aims of what she was doing.

8   The fact that she was supervising, organizing him clearly

9   establishes the applicability of that enhancement.

10         It's not the four-level enhancement.  She doesn't have

11  to be the head of some organization.  Rather, there's one

12  person, only needs to be one, Kevin Bui, and the text messages

13  do clearly indicate that she was utilizing her brother as a

14  person working for her.  She was supervising him, telling him

15  what to do, setting the price, doing the things which are

16  defined under the applicable enhancement, which is the two-level

17  enhancement in 3B1.1(c), to organize his activities.  So, I

18  believe that the two level enhancement is appropriate under that

19  circumstance.

20         Mr. Burstein, anything else on the other enhancement,

21  which is the juvenile, using a juvenile?

22             MR. BURSTEIN:  No, Your Honor.  Thank you.

23             THE COURT:  Okay.  Then I will overrule that objection

24  as well.  There's no question that Kevin Bui at the time was a

25  juvenile.  The defendant was utilizing him.  That enhancement

21-cr-12-PAB-1     Sentencing Hearing     07-15-2022

1   applies as well.  And as a result, the objections to the

2   calculation of the offense level are overruled.

3          Let's now move on to talking about the motion for a

4   variant sentence.  Mr. Steinberg or Mr. Burstein, would you like

5   to argue that motion separately or combine the overall

6   recommendation of a sentence in this case with the argument as

7   to that motion?

8          MR. STEINBERG:  Combine.

9          THE COURT:  All right.  Ms. Rangel, any objection to

10  Mr. Steinberg combining them?

11         MS. RANGEL:  No, Your Honor.

12         THE COURT:  All right.  I will hear from Mr. Steinberg

13  first.  After that, I will hear from Ms. Rangel.  And finally, I

14  will give Ms. Bui an opportunity to address the Court if she

15  wishes to do so.  Mr. Steinberg, go ahead.

16         MR. STEINBERG:  Thank you, sir.  Judge, we begin with

17  the premise that maybe as you get older, you become hopefully

18  wiser, and you realize that people at 24 are not fully

19  developed.  They don't have an understanding of many of the

20  ramifications of their conduct.

21         And this case represents a special, if you will,

22  situation, because I understand better than most what it's like

23  to be a child of immigrants who have parents who don't speak the

24  language, who come from a different culture, and the impact that

25  has as you grow up.

21-cr-12-PAB-1     Sentencing Hearing     07-15-2022

1     And there's a certain bit of rebelliousness that comes

2   because you're thrust into a completely different culture.  The

3   peer pressure that occurs to, if you will, abandon the, quote,

4   old country, unquote, and try to live your life in this new

5   culture, and the competition you have with oftentimes your

6   parents who want to cling to their ways, their culture, their

7   mores, and it creates havoc.

8     And I've seen it more often than not end up with

9   situations like we have here, and that is you have someone who

10   is young, who has no criminal record, and the guideline, albeit

11   advisory, I think, if I recall, at the bottom of the range is

12   144 months.  Which, using my rough math, is 12 years.

13     She's not eligible for safety valve because of the gun.

14   I understand that.  And she's not going to be eligible for First

15   Step because of the gun, because of other factors that will make

16   her ineligible.

17     So, is the world going to be a better place if she gets

18   ten years versus twelve years?  Is that not enough to deter

19   conduct?  So, I can't believe that I'm in the position that I'm

20   having to ask you to consider a 10-year sentence for a

21   first-time offender in this situation, where we both know that

22   if we were, if you will, a couple blocks down, we wouldn't be

23   having this conversation.

24     But the realities of life are what they are, and I'm

25   going to suggest to you that a 120-month sentence, given the

21-cr-12-PAB-1     Sentencing Hearing     07-15-2022

1   unique circumstances that apply here, deals with all the factors

2   the Court must utilize and consider, and I want to emphasize the

3   three that I think are important.  One, the youth.  Two, the

4   cultural differences, and what I mean by that is I think the

5   Court -- I know you always prepare -- is aware that I think she

6   left Vietnam when she was three years old.  And I think the

7   Court is aware that the language spoken at the home was

8   different than English.

9          And I think that the fact that she's a first-time

10  offender ought to be given some weight.  So, under the 3553

11  statutory guidelines, I'm hopeful that the Court will see fit

12  for a 10-year sentence.  Thank you.

13          THE COURT:  Thank you, Mr. Steinberg.  Ms. Rangel?

14          MS. RANGEL:  Your Honor, I recognize now that it's

15  clear what the request for the variance is, that it's a

16  ten-month variance.  I recognize that that might not seem -- you

17  know, in the scheme of things, as Mr. Steinberg just laid out,

18  this is someone who has no prior criminal history, and has never

19  spent time in prison.  And I think that always becomes a

20  difficult --

21          THE COURT:  And I think I'm just realizing -- I think,

22  Mr. Steinberg, because the Government is asking for a bottom of

23  the guideline, so 144; right?  And he's asking for 120.

24          MS. RANGEL:  I'm not the best at math, but I don't

25  think 144 is the bottom of the guidelines, because it's 60 plus,

21-cr-12-PAB-1    Sentencing Hearing    07-15-2022

1    I think it would be 84 as to count two, if my math is correct.

2         THE COURT:  Right.  And then 60.

3         MS. RANGEL:  So, I think bottom of the guidelines is

4    130, because it's -- I think it's 60 plus 70.

5         THE COURT:  Okay.  All right.  But the Government is

6    asking for 144?

7         MS. RANGEL:  Correct.

8         THE COURT:  Understood.

9         MS. RANGEL:  I apologize for that, Your Honor.

10        THE COURT:  That makes sense.  You're right.  Go

11   ahead.

12        MS. RANGEL:  Thank you.  So, I guess the point I'm

13   trying to make is I always find it difficult, you know, to talk

14   these numbers when really we're talking about someone's life;

15   right?  And it's easy to kind of lose track of, well, ten

16   months, you know, I am asking for 144 on -- you know, so an

17   additional two years.

18        I think it's easy to kind of say, you know, what really

19   is the difference there?  And for me, you know, just looking at

20   the totality of the circumstances here, taking into full

21   account, as the guidelines of course do, the fact that this is a

22   first-time offender, the conduct in this case is not on par with

23   that of a first-time offender.

24        And that is exactly why she is facing the guidelines

25   that she is facing, the mandatory minimum that she is facing is

21-cr-12-PAB-1    Sentencing Hearing    07-15-2022

1   because it is driven by her conduct.  And, you know, though

2   there's a heavy emphasis on her age, and certainly she is young,

3   but she also demonstrates a clear savviness with regard to

4   business.

5          And, unfortunately, she made the decision to apply

6   those skills to drug trafficking.  And it is clear from the

7   evidence in this case that she was able to very readily build a

8   substantial and successful business dealing drugs.

9          THE COURT:  Well, let's assume -- let's kind of extend

10  some of Mr. Steinberg's argument.  So, you know, her parents are

11  immigrants.  Father establishes a successful business.  Mother

12  pretty much speaks just Vietnamese.  Ms. Bui, when she's in

13  school, really excels.  Her GPA is over 4.0.  A little bit less

14  successful when she was in, I don't know what it was, some other

15  type of class after that, but seems to be highly intelligent.

16         So, let's assume that, you know, she's -- perhaps

17  partly because of cultural reasons, you know, maybe she's under

18  the influence of culture and her parents and is driven to

19  succeed in school, but then she breaks away from that, and now

20  she is excelling in something else, drug dealing, but what about

21  Mr. Steinberg's immaturity argument?

22         I mean, can that -- you know, can that be a sign that

23  she's just lost her way, and she's good at it because she's good

24  at a lot of things if she puts her mind to them, but, you know,

25  why hammer her or hold all that activity against her if she's

21-cr-12-PAB-1     Sentencing Hearing     07-15-2022

1   young and, you know -- if, you know, perhaps some of it is

2   explained by the fact that, you know, she set her mind to it and

3   is good at it, but maybe that's not necessarily what the future

4   would hold for her?

5           MS. RANGEL:   I guess the part I struggle with with

6   regard to the immaturity is looking at her conduct here.

7   Because it is drug dealing, and it's also selling firearms.

8   It's easily obtaining firearms, and then it's selling those.

9   And the maturity aspect of it, to me, this conduct, you would

10  easily see with someone, you know, in their 30s, in their 40s,

11  kind of building this same empire, if you will, of establishing

12  a customer base, clearly easily obtaining large quantities of

13  different kinds of narcotics, firearms.

14          And so to me, when I think about maturity, I struggle

15  to say somehow that was a factor for this in a way that is

16  mitigating, when this conduct is so aggravated and not

17  reflective of maturity.

18          And let me, I guess, maybe give a separate example.  I

19  think maturity perhaps could come into play with her customer

20  base being her brother's high school friends, being a lot of

21  juveniles.  I think you could point to that.  It's obviously

22  very aggravated, but I think you could point to that and say,

23  well, she's selling to them because this is, you know, the

24  people that she's going to readily have access with.  And I

25  think that cuts both ways.

Kevin P. Carlin, RMR, CRR

21-cr-12-PAB-1    Sentencing Hearing    07-15-2022

1            But to me, I guess that's kind of the logical extension
2    of the maturity aspect.  The role that her age played, but I
3    don't see when I look at her conduct, saying, well, that's just
4    immature.  To me, I think the fact that she is good at it
5    demonstrates a level of maturity in spite of her age.  I don't
6    know if that --

7            THE COURT:  I understand.

8            MS. RANGEL:  That's what I would say in response to
9    that.  And I think the fact that, you know, her parents did work
10   hard is something that makes this even more aggravated.  By her
11   own admission, she wanted for nothing in life.  And she says, in
12   fact, you know, she kind of holds that against her parents,
13   because really it sounds like she wanted more emotional support
14   than material support, but she certainly lacked for nothing.

15           And I think that perhaps maybe also goes to your
16   maturity question; right?  To say, well, I've always had
17   everything handed to me, now I can make additional money doing
18   this, and it's just pure profit.  To me, that falls more on the
19   aggravating side of things than mitigating, but I certainly can
20   see a way that you could look at that and say, well, that's also
21   immaturity, as opposed to saying, I'm so grateful to have, you
22   know, had this very privileged life, and now I'm going to put my
23   talents to better use.  I just see that as more aggravation than
24   mitigation.

25           I do think the fact that she had a wide distribution

21-cr-12-PAB-1     Sentencing Hearing     07-15-2022

1    net, which necessarily included juveniles for both the drugs and

2    the firearms, certainly cuts against a variant sentence.  I

3    think taking into consideration her age, her circumstances, the

4    fact that she's a first-time offender landed me below the top of

5    the guidelines, and more of kind of bottom of the midrange, I

6    guess, if that makes sense.  Pretty solidly the midrange.

7           But I could not escape from the aggravated nature of

8    this conduct.  Looking at those text messages, you know, her

9    brother is at school, is hanging out with his girlfriend, trying

10   to, you know, score with his girlfriend, and she's saying, go do

11   this.  When you're done with class, go do this drug deal.  Go

12   meet up with this person.  Just so insistent on doing it for her

13   so she didn't have to do it herself.  Just being able to just

14   make pure profit on that, regardless.

15          And I'm not saying her brother is some saint or angel,

16   but it doesn't change the fact that you're telling a high

17   schooler, hey, when you get out of economics, go do this drug

18   deal for me.

19          And in fact it's fair to say, you know, look at the

20   chain of events that happens when he was robbed.  And this is a

21   situation that she never showed any regard for.  He could have

22   been robbed any time he did a drug deal for her.  He did at

23   least 30 drug deals for her in a matter of two months.  She

24   never once showed any regard for him.  She never once showed any

25   regard for the juvenile she was selling drugs to, she was

21-cr-12-PAB-1     Sentencing Hearing     07-15-2022

1   selling firearms to.

2         She insisted that they in fact stay with her and buy

3   that firearm from her.  She just has never shown any concern for

4   anyone but herself and her ability to make money.  And that's

5   why I think that the sentence, though stiff, though harsh, is

6   more than appropriate given her conduct.

7         THE COURT:  All right.  Thank you, Ms. Rangel.

8   Mr. Steinberg, anything else from you?

9         MR. STEINBERG:  Just in terms of what she wanted, I

10  can tell you she wanted acceptance.  She wanted assimilation.

11  She wanted to be an American.  And so she found -- because I

12  think she was like 22 when all this was going on.  She found

13  what she believed to be a way to be accepted and to be an

14  American.  And that's what's so unfortunate about this.

15        So, I'm going to harp back on the fact that the bottom

16  of the guideline I think is 130.  I think when we did the plea

17  agreement, when the Government -- maybe they didn't know the

18  law.  They thought that the bottom of the guideline was going to

19  be, I think 111, of their proposed guideline.  And now they come

20  in here and want a sentence of 144 months.

21        So, it's always offensive to me.  I never understand

22  the logic that you were comfortable with a guideline at 111 at

23  the bottom, and you did, and you've done this before.  You know,

24  in terms of the give and take, it's ultimately the Government

25  that writes the plea agreement.  Not to suggest we don't have

21-cr-12-PAB-1     Sentencing Hearing     07-15-2022

1  input and impact, but 22-year-olds going to jail for this amount

2  of time, I just don't think that that's what we're about.  I

3  think we're better than that.  I really do.  Thank you.

4         THE COURT:  Thank you, Mr. Steinberg.  Ms. Bui, would

5  you like to address the Court regarding what you think the

6  sentence in this case should be?

7         THE DEFENDANT:  Yes.

8         THE COURT:  If you don't mind going to the podium.

9  Thank you.

10         THE DEFENDANT:  Good morning, Your Honor.  First and

11  foremost, I would like to take responsibility for my actions and

12  the consequences that have come from this.  I came to the U.S.

13  when I was three years old from Vietnam, with my parents.  I

14  grew up in the Sun Valley Projects, and was there for a period

15  of time.

16         My parents have always been hard workers, and have

17  always been successful, but the one thing I lacked from them was

18  their emotional support.  They were never really there for me as

19  parents.  They were just always working and worried about money.

20  With all of that, there has been problems at home as well, with

21  my father and my mother.  And just being in between the middle,

22  like, it's made it really hard for me not knowing when my dad

23  was going to leave or they were going to both agree on being

24  divorced.

25         It was very hard for me emotionally, and my brother --

21-cr-12-PAB-1     Sentencing Hearing     07-15-2022

1   little brother too lacked the support that he needed, and I was

2   stuck in between my parents' problem and helping my brother.

3        I did really well in school, and I just was in a lot of

4   really bad relationships that have taken me down this path that

5   I didn't want to go down, but just being around -- surrounded by

6   the wrong people at the wrong time has caused me to end up where

7   I am today.  And I'm very sorry for my actions, and I apologize

8   to everyone that I've hurt and affected from this situation.

9        THE COURT:  All right.  Thank you very much, Ms. Bui.

10  You may have a seat.

11       The United States sentencing commission guidelines are

12  advisory, and as a result, the Court does not have to sentence

13  within the guidelines.  Nevertheless, the Court has taken the

14  guidelines into account in determining an appropriate sentence.

15  The Court has also taken into account the statutory factors

16  which are set forth at 18 United States Code Section 3553(a).

17       The Court has already ruled on the objections to the

18  guideline range.  Let me just real quickly address the factual

19  objections which are contained in docket number 85, beginning on

20  page five.  Ms. Bui had objected to the second sentence of the

21  footnote on page three of the presentence investigation report.

22  I overrule that particular objection.  That particular footnote

23  had talked about -- or, sorry -- money being in Kevin Bui's

24  room.  While I take that into account because Kevin Bui was

25  operating his own separate drug distribution network, I'm not

21-cr-12-PAB-1    Sentencing Hearing    07-15-2022

1   holding that fact against Ms. Bui in any way.

2          I overruled the objection in paragraph 17 of docket

3   number 85, because there's no objection as to the accuracy of

4   that, and the probation department can of course put in a

5   presentence report any information that at least could be

6   relevant to sentencing -- that could be relevant to sentencing.

7   It was appropriately included.

8          The objection to paragraph 54, which is paragraph 80 --

9   sorry.  Paragraph 18 of docket number 85 has been corrected by

10  the probation department.

11         The paragraph 62 objection, which is in paragraph 19, I

12  overrule that objection, but I'm not taking into account

13  adversely to Ms. Bui any of the information contained in

14  paragraph 62 of the presentence investigation report.

15         Paragraph 20 of docket number 85, I will overrule that

16  objection as well.  There's no objection that that's inaccurate.

17  However, I will not hold that against Ms. Bui in any respect for

18  purposes of sentencing.

19         And, finally, as to paragraph 21 of docket number 85,

20  the objection to paragraph 27 concerning a sale of Sig Sauer

21  handgun, the United States has attached records showing that the

22  presentence investigation report is correct.  I will overrule

23  that objection.

24         Ms. Bui has filed a motion for a variant sentence, and

25  the grounds for the variance have been further explained today

21-cr-12-PAB-1     Sentencing Hearing     07-15-2022

1   by Mr. Steinberg.  The Court has overruled her objections, and

2   some of the basis for the motion for a variant sentence were

3   based on that, but there are other reasons too.  For instance,

4   her age, cultural situations, and whether or not there's really

5   a need for as much punishment as the Government is asking for or

6   even based upon the bottom of the guideline range.

7          So, let's talk about some of those factors right now.

8   There's no doubt that Ms. Bui suddenly -- well, maybe not

9   suddenly, but at least dramatically kind of goes off the tracks,

10  going from a person who had really done just, you know, she was

11  like immigrant success story, not that she's -- you know, she

12  from the age of three is living in the United States, so she's

13  culturally assimilated, but I'm sure that she made her parents

14  proud and that she's getting spectacular grades and doing a

15  great job.

16         And then all of a sudden, perhaps because of some bad

17  relationships, perhaps because as Mr. Steinberg said, as she's

18  getting older, she's somewhat rebelling, but, you know, she goes

19  from this kind of model student to someone who is, you know, if

20  anything, you know, in terms of wanting to be an American,

21  apparently her view of that is, you know, watching Scarface or

22  something.

23         She's doing stupid stuff like, you know, posting

24  pictures of herself with drugs and guns.  You know, this is the

25  very opposite of leading a law-abiding life.  She's just kind of

Kevin P. Carlin, RMR, CRR

21-cr-12-PAB-1     Sentencing Hearing     07-15-2022

1   going over to the dark side.

2          And, you know, perhaps in terms of responsibility,

3   given her young age, that should not be treated the same as it

4   should be if, you know, she was older.  But as Ms. Rangel said,

5   you know, the fact that she may be intelligent, the fact that

6   she may have some of those cultural issues going on, it's hard

7   to really give -- you know, provide a variance based upon that

8   type of behavior, because, you know, there are lots and lots of

9   people out there who are in the exact same circumstances as

10  Ms. Bui with, you know, driven immigrant parents, maybe

11  different language, and, you know, the children may rebel in

12  some respect, but do they become drug dealers?  Do they use

13  their younger brother to mix him up in drug dealing?

14          I mean, if he's already mixed up in drug dealing, why

15  would you further mix him up in drug dealing?  You know, Ms. Bui

16  herself talked about helping her brother.  You don't help your

17  brother by making him -- or using him as a tool of your drug

18  trade.

19          You know, even storing a bunch of drugs in your

20  family's house -- and think of the danger that could pose to the

21  parents if someone, you know, managed -- or someone decided to

22  go raid her stash somehow, and get through to the house.  You

23  know, that's not, you know, a sign of anything other than, you

24  know, sheer recklessness and bad judgment.

25          Selling drugs to juveniles, selling guns to juveniles,

Kevin P. Carlin, RMR, CRR

21-cr-12-PAB-1     Sentencing Hearing     07-15-2022

1  maybe that's the natural market, but Ms. Bui wasn't a juvenile,

2  and she was doing that.  She's 22 years old.  That's not old,

3  but, you know, Americans are charged with a lot of

4  responsibilities by the time they become an adult.  And by the

5  time you get to be 22, you're supposed to be able to figure out

6  a lot of things.

7         It's not hard to figure out that dealing drugs and guns

8  is just screamingly, you know, red flag bad to do.  And so while

9  I still think her age is a mitigating factor, it certainly is

10  not anything that would justify giving her a variant sentence.

11         There's an indication that she suffers from various

12  types of mental disorders.  It's mentioned in paragraph 15.

13  There's -- I don't find anything there that would substantiate

14  that as a basis for a variant sentence.  Maybe those things are

15  all factors that came into play, but there's no indication that

16  she wasn't perfectly capable of making her own decisions, and

17  she's a highly intelligent person.  And, unfortunately, she used

18  that intelligence to operate a drug network successfully.

19         And her judgment wasn't -- there's no evidence her

20  judgment was clouded in any way, shape, or form by any type of

21  mental disorder that was prompting her to do that.  She was

22  doing this apparently to get money.  There's no evidence that

23  she was gainfully employed in any way during the course of her

24  doing this.

25         So, this is, you know, someone who had opted, you know,

21-cr-12-PAB-1     Sentencing Hearing     07-15-2022

1   living rent free in her parents' house to become a drug dealer

2   and earn money that particular way, and nothing about that is in

3   any way mitigating to the extent that it would justify a variant

4   sentence, and I will deny her motion for a variant sentence.

5        The next question becomes whether -- where within the

6   guideline range Ms. Bui should be sentenced.  Here, I think that

7   her age does come into play.  She is very young.  The fact that

8   she was acting so 180 degrees differently from what she had been

9   acting before, even if she has no good reason not to have done

10  it, I think bears on the issue of how much time that she should

11  get.  I believe that it is appropriate to sentence her to the

12  bottom of the guideline range, and as a result, that will be the

13  sentence in this case.

14       Therefore, the Court determines that other than the

15  objections that I have previously ruled on, neither side has

16  made any other objections, and therefore the remaining factual

17  issues will be adopted without objections.

18       The Court's findings of fact concerning sentencing, the

19  Court finds that the total offense level is 27 as to count two.

20  The defendant's criminal history category is one, and that

21  results in an imprisonment range of between 70 and 87 months as

22  to count two.  The fine range being between 25,000 and

23  $1 million.  As to count one, the guideline range is five years

24  consecutive to any other sentence.  The supervised release range

25  is one to two years as to count one, and three years as to count

21-cr-12-PAB-1     Sentencing Hearing     07-15-2022

1  two.

2        The Court finds no reason to depart or vary from the

3  advisory guideline range which does not exceed 24 months, and

4  will impose a sentence within the advisory guideline range.  And

5  therefore, pursuant to the Sentencing Reform Act of 1984, it is

6  the judgment of the Court that Tanya Bui is hereby committed to

7  the custody of the Bureau of Prisons to be imprisoned for a

8  total term of 130 months, as follows: count one, the Court will

9  impose a five-year sentence consecutive to count two; and as to

10  count two, the Court will impose a sentence of 70 months.

11        Upon release from imprisonment, Ms. Bui shall be placed

12  on supervised release for a term of four years.  That term shall

13  consist of four years as to count one, and three years as to

14  count two, both of those terms to run concurrently with each

15  other.

16        Within 72 hours of release from the custody of the

17  Bureau of Prisons, Ms. Bui shall report to the probation office

18  in the district in which she is released.  While on supervision,

19  Ms. Bui must not commit another federal, state, or local crime,

20  and she must not unlawfully possess a controlled substance.

21        Ms. Bui must refrain from any unlawful use of a

22  controlled substance, and she must submit to one drug test

23  within 15 days of release from imprisonment, and a maximum of 20

24  tests per year of supervision thereafter.

25        Ms. Bui must cooperate in the collection of DNA as

21-cr-12-PAB-1     Sentencing Hearing     07-15-2022

1   directed by the probation officer, and she must comply with the

2   standard conditions that have been adopted by the Court in

3   general order 2020-20.

4          The Court finds that the following special conditions

5   of supervision are determined to be reasonably related to the

6   factors enumerated in 18 United States Code Section 3553(a) and

7   18 United States Code Section 3563(b) or 85 -- or, excuse me --

8   3583(d).

9          Further, based upon the nature and circumstances of the

10   offense and history and characteristics of Ms. Bui, the

11   following conditions do not constitute a greater deprivation of

12   liberty than reasonably necessary to accomplish the goals of

13   sentencing.

14          Namely, number one, Ms. Bui must participate in a

15   program of testing and/or treatment for substance abuse as

16   approved by the probation officer, and follow the rules and

17   regulations of such program.  The probation officer in

18   consultation with the treatment provider will supervise her

19   participation in the program as to modality, duration, and

20   intensity.

21          She must abstain from the use of alcohol or other

22   intoxicants during the course of treatment, and she must not

23   attempt to obstruct, tamper with, or circumvent the testing

24   methods.  She must pay the cost of testing and/or treatment

25   based upon her ability to pay.

21-cr-12-PAB-1      Sentencing Hearing     07-15-2022

1    Second, she must participate in a program of mental

2    health treatment approved by the probation officer and follow

3    the rules and regulations of such program.   The probation

4    officer in consultation with the treatment provider will

5    supervise her participation in the program, once again as to

6    modality, duration, and intensity.   She must pay the cost of

7    treatment based upon her ability to pay.

8    Third, she must submit her person, property, house,

9    residence, papers, computers, as defined in 18 United States

10   Code Section 1030(e)(1), other electronic communications or data

11   storage devices or media or office to a search conducted by a

12   United States probation officer.   Failure to submit to a search

13   may be grounds for revocation of release.

14   Ms. Bui must warn any other occupants of the premises

15   that they may be subject to search pursuant to this condition.

16   An officer may conduct a search pursuant to this condition only

17   if a reasonable suspicion exists that she has violated a

18   condition of her supervision and that the areas to be searched

19   contain evidence of the violation.   Any search must be conducted

20   at a reasonable time and in a reasonable manner.

21   The Court believes that that condition is appropriate

22   given the nature and circumstances of this particular offense,

23   wherein Ms. Bui used electronic devices to arrange for narcotic

24   and gun sales.   And, also, she within her residence had both

25   guns, drugs, and drug paraphernalia, tools of the trade.

21-cr-12-PAB-1     Sentencing Hearing     07-15-2022

1      Fourth, Ms. Bui must document all income and

2   compensation generated or received from any source, and must

3   provide that information to the probation officer as requested.

4      Fifth, she must provide the probation officer access to

5   any requested financial information and authorize the release of

6   any financial information.

7      Sixth, she must not cause or induce anyone to conduct

8   any financial transaction on her behalf or maintain funds on her

9   behalf, without the permission of the probation officer.

10      Ms. Bui must pay a special assessment of $200, $100 per

11   count, which is due and payable immediately.  The Court finds

12   that she does not have the ability to pay a fine, so the Court

13   will waive a fine in this case.

14      The Court will also incorporate the findings in the

15   preliminary order of forfeiture and will order that she forfeit

16   her interest in the property referred to in that order in this

17   particular case.

18      Finally, the defendant is advised of her right to

19   appeal the sentence in this case.  By providing this advisement,

20   I don't mean to suggest that certain waivers of appellate rights

21   in her plea agreement are not fully effective.  Rather, if she

22   has any questions about what appellate rights she may still

23   have, she can either consult with Mr. Steinberg or Mr. Burstein,

24   or she can review her plea agreement.

25      Nevertheless, if she desires to appeal, a notice of

21-cr-12-PAB-1     Sentencing Hearing    07-15-2022

1   appeal must be filed with the clerk of the court within 14 days

2   after entry of judgment, or the right to appeal will be lost.

3   If she is unable to afford an attorney for an appeal, the Court

4   will appoint one to represent her.  And if she so requests, the

5   clerk of the court must immediately prepare and file a notice of

6   appeal on her behalf.

7          The Court will grant the defendant's motion for an

8   additional one-level reduction for acceptance of responsibility,

9   which is docket number 94.  The Court will also grant the

10  Government's motion to dismiss the indictment, docket number 95,

11  and will sign a written order to that effect.

12         Ms. Rangel, anything else on behalf of the United

13  States?

14         MS. RANGEL:  No.  Thank you, Your Honor.

15         THE COURT:  Mr. Steinberg, anything else, or

16  Mr. Burstein, anything else on behalf of Ms. Bui?

17         MR. BURSTEIN:  Yes, Your Honor.  My client has family

18  ties to the San Francisco Bay Area.  She's asking the Court

19  recommend that she be sent to the Dublin facility.

20         THE COURT:  Who does she have there?

21         MR. BURSTEIN:  Her father's side of the family resides

22  there, and that is a convenient place for other family members

23  to be able to travel and stay.

24         THE COURT:  Any objection to that, Ms. Rangel?

25         MS. RANGEL:  No objection.

21-cr-12-PAB-1     Sentencing Hearing     07-15-2022

1          THE COURT:  I will make a recommendation that she be

2   sentenced at an appropriate Bureau of Prisons facility,

3   commensurate with her security classification in or proximate to

4   the Northern District of California.  Anything else,

5   Mr. Burstein?

6          MR. BURSTEIN:  No.  Thank you, Your Honor.

7          THE COURT:  All right.  Ms. Bui will be remanded to

8   the custody of the United States Marshals, and the Court will be

9   in recess.  Thank you.

10         (Proceedings concluded at 10:15 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        REPORTER'S CERTIFICATE

2

3

4          I, KEVIN P. CARLIN, Official Court Reporter for the

5    United States District Court for the District of Colorado, a

6    Registered Merit Reporter and Certified Realtime Reporter, do

7    hereby certify that I reported by machine shorthand the

8    proceedings contained herein at the time and place

9    aforementioned and that the foregoing pages constitute a full,

10   true, and correct transcript.

11          Dated this 31st day of March, 2023.

12

13

14

15

16          _____
            Kevin P. Carlin, RMR, CRR
17          Official Court Reporter

18

19

20

21

22

23

24

25

                     Kevin P. Carlin, RMR, CRR